CLARE E. CONNORS #7936
United States Attorney
District of Hawaii

KENNETH M. SORENSON
MICAH SMITH
MICHAEL F. ALBANESE #9421
Assistant U.S. Attorneys
Room 6-100, PJKK Federal Building
300 Ala Moana Blvd.
Honolulu, Hawaii   96850
Telephone:  (808) 541-2850
Facsimile:   (808) 541-2958
Email:  Ken.Sorenson@usdoj.gov
            Micah.Smith@usdoj.gov
            Michael.Albanese@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
Feb 08, 2022, 12:27 pm
Michelle Rynne, Clerk of Court

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR. NO. 22-00013JAO |
| Plaintiff, | INFORMATION |
| vs. | [18 U.S.C. §§ 1343 and 1346] |
| TY J. K. CULLEN, | |
| Defendant. | |

INFORMATION

The U.S. Attorney charges:

## INTRODUCTORY ALLEGATIONS

1.  From in or around January 2011, until the filing date of this Information, TY J. K. CULLEN, the defendant, was a Hawaii State Representative. Beginning in or around January 2013, CULLEN represented House District 39, which is a District on Oahu that includes Village Park, Royal Kunia, Waipahu, Makakilo, and West Loch. Over the years, CULLEN has held positions on various committees. As of the filing date of this Information, CULLEN was the Vice Chair of the House Committee on Finance, as well as a member of the Committees on Government Reform and on Pandemic and Disaster Preparedness.

2.  Beginning at a time unknown, but at least by September 2014, CULLEN accepted bribes from Person A, the owner and operator of a Hawaii-based business. In exchange for those bribes, CULLEN agreed to provide, in his official capacity as a member of the Hawaii State House of Representatives, legislative support that would be beneficial to Person A's company.

3.  Furthermore, despite CULLEN's ethical and statutory obligation to do so, CULLEN did not disclose these bribe payments on the State of Hawaii mandatory Gift Disclosure Statement required of all legislators who receive a gift valued at more than $200. By failing to disclose the bribes he received, CULLEN

concealed this material information from both the Hawaii State Ethics Commission and the people of Hawaii.

## The State of Hawaii Legislature

4. The State of Hawaii legislature is the legislative branch of the State of Hawaii government, a body composed of the Hawaii State Senate (the "Senate") and the Hawaii State House of Representatives (the "House"). The Senate is comprised of 25 members elected to four-year terms and the House is comprised of 51 members elected to two-year terms.

5. Under the Constitution of the State of Hawaii (the "Constitution"), state legislators are duty bound to faithfully act for the benefit of the community. The Constitution recognizes that legislators exercise power entrusted to them by the people: "All political power of this State is inherent in the people and the responsibility for the exercise thereof rests with the people. All government is founded on this authority." Art. I, § 1. The entrusted legislative power is substantial: it "extend[s] to all rightful subjects of legislation not inconsistent with this constitution or the Constitution of the United States." Art. III, § 1. And the Constitution underscores that the people of Hawaii expect these powers to be exercised faithfully and honestly: "The people of Hawaii believe that public officers and employees must exhibit the highest standards of ethical conduct and

that these standards come from the personal integrity of each individual in government." Art. XIV.

6. Consistent with the expectation that legislators and other public officers will exhibit the highest standards of ethical conduct in carrying out their substantial responsibilities, the Constitution of the State of Hawaii provides that "[a]ll eligible public officers, before entering upon the duties of their respective offices, shall take and subscribe to the following oath or affirmation: 'I do solemnly swear (or affirm) that I will support and defend the Constitution of the United States, and the Constitution of the State of Hawaii, and that I will faithfully discharge my duties as _____ to the best of my ability.'" Art. XVI, § 4. The oath requirement applies, among others, to "the members of both houses of the legislature." *Id.*

7. Hawaii state law also explicitly prohibits legislators from accepting bribes and thereby acting in a manner that serves their own interests, rather than the best interests of their constituents and of the community. Specifically, Hawaii Revised Statutes § 710-1040 makes it a crime for a legislator to solicit or accept a pecuniary benefit with the intent that the legislator's vote, opinion, judgment, exercise of discretion, or other action as a public servant would thereby be influenced. Moreover, with limited exceptions not applicable here, Hawaii state law requires legislators to file a Gift Disclosure Statement, by June 30 of each

year, disclosing any gifts "valued singly or in the aggregate in excess of $200, whether the gift is in the form of money, service, goods, or in any other form" whenever the "source of the gift or gifts have interests that may be affected by official action or lack of action by the legislator or employee." Haw. Rev. Stat. § 84-11.5.

CULLEN's Official Duties and Powers in the House

8. As a legislator in the House, CULLEN was tasked with the honest representation of his constituents, which included the process of drafting and reviewing of legislation. CULLEN was also responsible for introducing bills, voting upon pending legislation, and taking part in the process of enacting legislation free from conflict and/or non-disclosed financial interests.

Person A

9. At all times relevant to this Information, Person A was the owner and operator of a Hawaii-based business that conducted industrial service business throughout the State of Hawaii. Among other things, Person A's business regularly entered into contracts with government agencies to provide services and products in the area of wastewater management. Person A's business was well positioned to avail itself of publicly financed cesspool conversion projects.

## The Bribe Payments

10. In or about the Fall of 2014, CULLEN traveled to New Orleans, Louisiana for a wastewater conference also attended by Person A. While there, CULLEN accepted casino chips from Person A, and also gained access to a more exclusive gambling area because he was accompanied by Person A, who was known to the casino as a valued customer due to the extent and value of the wagering he/she conducted. While CULLEN was in this area with Person A, Person A placed bets for CULLEN. In addition, relying in part upon chips provided to him by Person A, and upon wagers made for him by Person A in the high roller area, CULLEN cashed out more than $22,000 worth of chips while in New Orleans.

11. On or about January 29, 2015, during the 2015 session of the Hawaii State Legislature, CULLEN, working in part from information provided by Person A, introduced a bill contemplating the development of a system to collect and treat wastewater from existing sewerage systems. The bill provided for a feasibility study and pilot project for the collection and treatment of wastewater in order to service a multitude of potable and non-potable water uses. This bill was introduced and supported by CULLEN as a direct favor to Person A based in part on financial benefits and gifts provided to him by Person A. The legislature's passage of the bill resulted in a subcontract being issued to Person A's company.

6

12. On or about September 4, 2019, Person A met with CULLEN at a restaurant in Honolulu. During the meeting, Person A told CULLEN that he/she wanted to collaborate on matters related to the upcoming legislative session. Person A then went with CULLEN to a restaurant restroom and provided him with $5,000 in cash for CULLEN's anticipated legislative assistance with an appropriation related to cesspool conversions.

13. On or about October 9, 2019, CULLEN met with Person A at an office location in Honolulu. During the meeting, Person A handed CULLEN an envelope containing $3,000 and told him that he/she would need CULLEN's assistance with legislation. CULLEN accepted the $3,000, indicating his willingness to assist Person A with official processes of the state legislature.

14. On or about December 19, 2019, Person A met with CULLEN concerning the upcoming legislative session. During the meeting, Person A asked CULLEN if he needed any "help". CULLEN stated that he was "paying plenty debt." Person A asked CULLEN if he needed "3" or "5", (meaning $3,000 or $5,000) to which CULLEN responded "5".

15. On or about January 13, 2020, Person A met with CULLEN at a Honolulu office location. During the meeting, Person A told CULLEN he/she needed assistance with the passage of a bill related to cesspool conversions. During the meeting, Person A handed CULLEN an envelope with $5,000 in cash

and told CULLEN that he/she needed "support" to make sure the appropriation for the cesspool conversion project was enacted into law. CULLEN accepted the money and stated that he would "pay attention."

16. On or about March 10, 2020, during a meeting at a Honolulu office, Person A told CULLEN that he/she needed assistance from CULLEN to "kill" the proposed cesspool conversion legislation referenced in Paragraph 15 above. Person A handed CULLEN an envelope containing $10,000 in cash, which CULLEN accepted. CULLEN told Person A that the bill would likely not pass due to COVID restrictions on the legislature, but that he would "monitor" the progress of the bill, inferring that if action were necessary to terminate enactment of the bill, he would take it.

17. On or about June 9, 2021, CULLEN entered into Person A's vehicle in order to be driven to a dinner engagement between them. Shortly after CULLEN entered the vehicle, Person A provided him an envelope containing $2,000 telling him "thank you for all the stuff you do" and informing him there were "a couple k in there for you". CULLEN responded, "oh yeah, ok perfect, thank you, thank you". Person A then told CULLEN that he/she would need some assistance from CULLEN with upcoming legislation before the legislature.

18. On or about October 8, 2021, CULLEN once again entered into Person A's vehicle for a planned lunch engagement. While in the vehicle, Person

8

A told CULLEN he/she needed assistance in obtaining an appropriation related to the project referenced in Paragraph 11 above in order to fund the next phase. Person A handed CULLEN an envelope with $5,000 which CULLEN accepted. CULLEN agreed that he would reach out to another state representative and an executive branch official in order to determine what action might be necessary to fund the project.

## Concealment of Material Information

19. As detailed in Paragraph 7, as a state legislator, CULLEN was required to file an annual Gift Disclosure Statement by June 30 of each year, disclosing any gifts "valued singly or in the aggregate in excess of $200, whether the gift is in the form of money, service, goods, or in any other form" whenever the "source of the gift or gifts have interests that may be affected by official action or lack of action by the legislator or employee." Haw. Rev. Stat. § 84-11.5.

20. The Gift Disclosure Statement for gifts received between June 1 through May 31 of any given year must be filed by June 30 of that year.

21. For the annual Gift Disclosure Statement due on June 30, 2015, which CULLEN filed on June 24, 2015, CULLEN declared legitimate funds paid to him from the National Conference of State Legislatures, but purposely failed to disclose the financial gifts or benefits given to him by Person A during the New Orleans casino trip.

22. During the gift disclosure period ending on May 31, 2020, CULLEN again disclosed legitimate stipend payments provided to him by the National Conference of State Legislatures, but knowingly failed to report cash bribes and benefits paid to him by Person A. In his June 26, 2020 Gift Disclosure Statement CULLEN failed to disclose the following "gift" payments paid to him by Person A, which by law were required to be reported:

    a. A bribery payment of $5,000 made on September 4, 2019;

    b. A bribery payment of $3,000 made on October 9, 2019;

    c. A bribery payment of $5,000 made on January 13, 2020; and

    d. A bribery payment of $10,000 made on March 10, 2020.

23. By disclosing legitimate gifts and financial benefits while concealing the bribes that he accepted for official action, CULLEN defrauded the citizens of Hawaii, who were entitled to CULLEN's honest and faithful services as an elected State official, and entitled to know that CULLEN had failed to provide those services.

## STATUTORY ALLEGATIONS

### Honest Services Wire Fraud
(18 U.S.C. §§ 1343 and 1346)

24. Between in or around September 2014, and in or around October 8, 2021, within the District of Hawaii, TY J. K. CULLEN, the defendant, did knowingly devise and intend to devise a scheme and artifice to defraud the citizens

of the State of Hawaii of their right to CULLEN's honest and faithful services as an elected legislator and Vice Chair of the House Committee on Finance, through bribery and concealment of material information.

25. It was part of the scheme and artifice to defraud that CULLEN secretly used his official position to enrich himself by accepting bribes from Person A in exchange for CULLEN's promise of providing, in his official capacity as a member of the State House, legislative support that would be beneficial to Person A's company.

26. On or around June 26, 2020, within the District of Hawaii and elsewhere, and for the purpose of executing the aforesaid scheme and artifice to defraud, and attempting to do so, CULLEN did knowingly transmit, and cause to be transmitted, a writing, sign, signal, and sound in interstate commerce, namely, CULLEN electronically submitted his annual Gift Disclosure Statement to the Hawaii State Ethics Commission which contained materially false statements and omissions in that it failed to report CULLEN's unlawful receipt of bribery payments, and other funds, which he accepted in return for his agreement to perform official acts as a State of Hawaii legislator.

All in violation of Title 18, United States Code, Sections 1343 and 1346.

## Forfeiture Notice

27. The allegations set forth in this Information are hereby re-alleged and incorporated by reference as though set forth in full herein for the purpose of noticing forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

28. The United States hereby gives notice that, upon conviction of the offense in violation of Title 18, United States Code, Sections 1343 and 1346 set forth in this Information, TY J. K. CULLEN, the defendant, shall forfeit to the United States any and all property, real or personal, constituting, or derived from, proceeds traceable to the violation of the offense set forth in this Information.

29. If by any act or omission of the defendant, any of the property subject to forfeiture described in paragraph 28 above:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

the United States will be entitled to forfeiture of substitute property up to the value of the property described above in paragraph 28, pursuant to Title 21, United States Code, Section 853(p).

DATED: __February 8, 2022__, at Honolulu, Hawaii.

_____
CLARE E. CONNORS #7936
United States Attorney
District of Hawaii

_____
KENNETH M. SORENSON
MICAH SMITH
MICHAEL F. ALBANESE
Assistant U.S. Attorneys

United States v. TY J. K. CULLEN
Information
Cr. No.

13