CLARE E. CONNORS #7936
United States Attorney
District of Hawaii

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
Feb 15, 2022, 12:48 pm
Michelle Rynne, Clerk of Court

MICHAEL NAMMAR
Chief, Criminal Division

KENNETH M. SORENSON
MICAH SMITH
MICHAEL F. ALBANESE #9421
Assistant U.S. Attorneys
Room 6-100, PJKK Federal Building
300 Ala Moana Blvd.
Honolulu, Hawaii    96850
Telephone:  (808) 541-2850
Facsimile:  (808) 541-2958
Email:      Ken.Sorenson@usdoj.gov
            Micah.Smith@usdoj.gov
            Michael.Albanese@usdoj.gov

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>TY J. K. CULLEN,<br><br>Defendant. | ) CR. NO. 22-00013-SOM-1<br>)<br>) MEMORANDUM OF PLEA<br>) AGREEMENT<br>)<br>) DATE:   February 15, 2022<br>) TIME:   11:00 a.m.<br>) JUDGE: Hon. Susan Oki Mollway<br>)<br>)<br>) |

## MEMORANDUM OF PLEA AGREEMENT

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the

UNITED STATES OF AMERICA, by its attorney, the United States Attorney for

the District of Hawaii, and the defendant, TY J. K. CULLEN, and his attorney,

Bernie Bervar, Esq., have agreed upon the following:

## THE CHARGES

1.     The defendant acknowledges that he has been charged in an

Information with honest services wire fraud, in violation of Title 18, United States

Code, Sections 1343 and 1346.

2.     The defendant has read the charge against him contained in the

Information, and that charge has been fully explained to him by his attorney.

3.     The defendant fully understands the nature and elements of the crime

with which he has been charged.

## THE AGREEMENT

4.     The defendant agrees to waive indictment and enter a voluntary plea

of guilty to the Information, which charges him with one count of honest services

wire fraud.   The defendant is aware that he has the right to have this felony

asserted against him by way of grand jury indictment.   The defendant hereby

waives this right and consents that this offense may be charged against him by way

of the Information.   In return for the defendant's plea of guilty to the Information,

the government agrees not to charge the defendant with additional violations of law related to the defendant's acceptance of bribes and other items of value known to the government on the date of this agreement.

5.      The defendant agrees that this Memorandum of Plea Agreement shall be filed and become part of the record in this case.

6.      The defendant enters this plea because he is in fact guilty of honest services fraud as charged in the Information, and he agrees that this plea is voluntary and not the result of force or threats.

## PENALTIES

7.      The defendant understands that the penalties for the offense to which he is pleading guilty include:

a.      A term of imprisonment of up to 20 years and a fine of up to $250,000, plus a term of supervised release of up to 3 years.

b.      In addition, the Court must impose a $100 special assessment as to each count to which the defendant is pleading guilty.   The defendant agrees to pay $100 for each count to which he is pleading guilty to the District Court's Clerk's Office, to be credited to said special assessments, before the commencement of any portion of sentencing.   The defendant acknowledges that failure to make such full advance payment in a form and manner acceptable to the

3

prosecution will allow, though not require, the prosecution to withdraw from this Agreement at its option.

c.     **Forfeiture.**   Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), the defendant shall forfeit any and all property, real or personal, constituting, or derived from, proceeds traceable to the violation of the offense set forth in the Information.

d.     **Restitution.**   The Court must also award restitution pursuant to Title 18, United States Code, Section 3663A, to the persons and entities victimized by the defendant's offenses.   The defendant understands that the Court will determine the amounts of restitution to be ordered, as well as the persons and entities entitled to such restitution, with the assistance of the United States Probation Office.

## FACTUAL STIPULATIONS

8.     The defendant admits the following facts and agrees that they are not a detailed recitation, but merely an outline of what happened in relation to the charge to which the defendant is pleading guilty:

a.     From in or around January 2011, until the filing date of the Information, TY J. K. CULLEN, the defendant, was a Hawaii State Representative representing House District 39, which is a District on Oahu that includes Village

4

Park, Royal Kunia, Waipahu, Makakilo, and West Loch.   Over the years,

CULLEN has held positions on various committees.   As of the filing date of the

Information, CULLEN was the Vice Chair of the House Committee on Finance,

and was a member of the Committees on Government Reform and on Pandemic

and Disaster Preparedness.

   b.   Beginning at a time unknown, but at least by September 2014,

CULLEN accepted cash payments and other financial benefits from Person A, the

owner and operator of a Hawaii-based business.   In exchange for those payments

and benefits, CULLEN agreed to provide, in his official capacity as a member of

the House, legislative support that would be beneficial to Person A's company.

   c.   Furthermore, despite CULLEN's ethical and statutory obligation to do

so, CULLEN did not disclose these payments and financial benefits on the State of

Hawaii mandatory Gift Disclosure Statement required of all legislators who

receive a gift valued at more than $200.   By failing to disclose the payments and

benefits he received, CULLEN concealed this material information from both the

Hawaii State Ethics Commission and the people of Hawaii.

   d.   As a State of Hawaii House legislator, CULLEN was tasked with the

honest representation of his constituents, which included the process of

formulating, discussing, drafting and reviewing legislation.   CULLEN was also

5

responsible for introducing bills, voting upon pending legislation and taking part in the process of enacting legislation free from conflict and/or non-disclosed financial interests.

     e.     At all times relevant to the Information, Person A was the owner and operator of a Hawaii-based business that conducted industrial service business throughout the State of Hawaii.    Among other things, Person A's business regularly entered into contracts with government agencies to provide services and products in the area of wastewater management.    Person A's business was well positioned to avail itself of publicly financed cesspool conversion projects.

     f.     In or about the Fall of 2014, CULLEN traveled to New Orleans, Louisiana for a wastewater conference also attended by Person A.    While there, CULLEN accepted casino chips from Person A, and also gained access to a more exclusive gambling area in the casino because he was accompanied by Person A, who was known to the casino as a valued customer due to the extent and value of the wagering he/she conducted.    While CULLEN was in this area with Person A, Person A placed bets for CULLEN.    In addition, relying in part upon chips provided to him by Person A, and upon wagers made for him by Person A, CULLEN cashed out more than $22,000 worth of chips while in New Orleans.

g.      On or about January 29, 2015, during the 2015 session of the Hawaii

State Legislature, CULLEN, working in part from information provided by Person

A, introduced a bill providing for the development of a system to collect and treat

wastewater from existing sewerage systems.   The bill provided for a feasibility

study and pilot project for the collection and treatment of wastewater in order to

service a multitude of potable and non-potable water uses.   This bill was

introduced and supported by CULLEN as a direct favor to Person A based in part

on financial benefits and gifts provided to him by Person A.   The legislature's

passage of the bill resulted in a subcontract being issued to Person A's company.

h.      On or about September 4, 2019, Person A met with CULLEN at a

restaurant in Honolulu.   During the meeting, Person A told CULLEN that he/she

wanted to collaborate on matters related to the upcoming legislative session.

Person A then went with CULLEN to a restaurant restroom and provided him with

$5,000 in cash for CULLEN's anticipated legislative assistance with an

appropriation related to cesspool conversions.

i.      On or about October 9, 2019, CULLEN met with Person A at an

office location in Honolulu.   During the meeting, Person A handed CULLEN an

envelope containing $3,000 and told him that he/she would need CULLEN's

assistance with legislation.   CULLEN accepted the $3,000, indicating his agreement to assist Person A with official processes of the state legislature.

j.      On or about December 19, 2019, Person A met with CULLEN concerning the upcoming legislative session.   During the meeting, Person A asked CULLEN if he needed any "help".   CULLEN stated that he was "paying plenty debt."   Person A then asked CULLEN if he needed "3" or "5", (meaning $3,000 or $5,000) to which CULLEN responded "5".

k.      On or about January 13, 2020, Person A met with CULLEN at a Honolulu office location.   During the meeting, Person A told CULLEN he/she needed assistance with the passage of a bill related to cesspool conversions. During the meeting, Person A handed CULLEN an envelope with $5,000 in cash and told CULLEN that he/she needed "support" to make sure the appropriation for the cesspool conversion project was enacted into law.   CULLEN accepted the money and stated that he would "pay attention."

l.      On or about March 10, 2020, during a meeting at a Honolulu office, Person A told CULLEN that he/she needed assistance from the defendant to "kill" the proposed cesspool conversion legislation referenced above in paragraph 8.k. Person A handed the defendant an envelope containing $10,000 in cash, which CULLEN accepted.   CULLEN told Person A that the bill would likely not pass

8

due to COVID restrictions on the legislature, but that he would "monitor" the progress of the bill, inferring that if action were necessary to terminate enactment of the bill, he would take it.

    m.     On or about June 9, 2021, CULLEN entered into Person A's vehicle in order to be driven to a dinner engagement between them.   Shortly after CULLEN entered the vehicle, Person A provided him an envelope containing $2,000 telling him "thank you for all the stuff you do" and informing him there's "a couple k in there for you."   CULLEN responded, "oh yeah, ok perfect, thank you, thank you."   Person A then told CULLEN that he/she would need some assistance from CULLEN with upcoming legislation before the legislature.

    n.     On or about October 8, 2021, CULLEN once again entered into Person A's vehicle for a planned lunch engagement.   While in the vehicle, Person A told CULLEN he/she needed assistance in obtaining an appropriation related to the project referenced in paragraph 8.g. above in order to fund the next phase. Person A handed CULLEN an envelope with $5,000 which CULLEN accepted. CULLEN agreed that he would reach out to another state representative and an executive branch official in order to determine what action might be necessary to fund the project.

o.      As a state legislator, CULLEN was required to file an annual Gift
Disclosure Statement by June 30 of each year, disclosing any gifts "valued singly
or in the aggregate in excess of $200, whether the gift is in the form of money,
service, goods, or in any other form" whenever the "source of the gift or gifts have
interests that may be affected by official action or lack of action by the legislator or
employee."

p.      The Gift Disclosure Statement for gifts received between June 1
through May 31 of any given year must be filed by June 30 of that year.

q.      For the annual Gift Disclosure Statement due on June 30, 2015, which
CULLEN filed on June 24, 2015, CULLEN declared legitimate funds paid to him
from the National Conference of State Legislatures, but purposely failed to
disclose the financial gifts and benefits given to him by Person A during the New
Orleans casino trip.

r.      During the gift disclosure period ending on May 31, 2020, CULLEN
again disclosed legitimate stipend payments provided to him by the National
Conference of State Legislatures, but knowingly failed to report cash payments and
benefits paid to him by Person A.   In his June 26, 2020 Gift Disclosure Statement
the defendant failed to disclose the following "gift" payments paid to him by
Person A, which by law were required to be reported:

1. a bribery payment of $5,000 made on September 4, 2019;

2. a bribery payment of $3,000 made on October 9, 2019;

3. a bribery payment of $5,000 made on January 13, 2020;

4. a bribery payment of $10,000 made on March 10, 2020;

By disclosing legitimate gifts and financial benefits while concealing the bribes that he accepted in return for performing, or agreeing to perform official acts, the defendant defrauded the citizens of Hawaii, who were entitled to CULLEN's honest and faithful services as an elected State official, and entitled to know that CULLEN had failed to provide those services.

     s.     The company tasked with hosting the filing of electronic Gift Disclosure Statements, such as the ones referenced in paragraphs 8.q. and 8.r. above, had its servers located in U.S. states other than the State of Hawaii. Accordingly, the Gift Disclosure Statements filed by the defendant moved in interstate commerce once they were electronically filed by him.

     9.     Pursuant to CrimLR 32.1(a) of the Local Rules of the United States District Court for the District of Hawaii, the parties agree that the charge to which the defendant is pleading guilty adequately reflects the seriousness of the actual offense behavior and that accepting this Agreement will not undermine the statutory purposes of sentencing.

## SENTENCING STIPULATIONS

10.     Pursuant to CrimLR 32.1(b) of the Local Rules of the United States District Court for the District of Hawaii and Section 6B1.4 of the Sentencing Guidelines, the parties stipulate to the following for the purpose of the sentencing of the defendant in connection with this matter:

a.     As of the date of this agreement, it is expected that the defendant will enter a plea of guilty prior to the commencement of trial, will truthfully admit his involvement in the offense and related conduct, and will not engage in conduct that is inconsistent with such acceptance of responsibility.   If all of these events occur, and the defendant's acceptance of responsibility continues through the date of sentencing, a downward adjustment of 2 levels for acceptance of responsibility will be appropriate.   *See* U.S.S.G. § 2C1.1(b)(2)3E1.1(a) and Application Note 3.

b.     The parties agree that the valuation of the bribe payments made to the defendant is more than $15,000 but less than $40,000.

c.     The United States Attorney agrees that the defendant's agreement herein to enter into a guilty plea constitutes notice of intent to plead guilty in a timely manner, so as to permit the government to avoid preparing for trial as to the defendant.   Accordingly, the United States Attorney anticipates

12

moving in the Government's Sentencing Statement for a one-level reduction in sentencing offense level pursuant to Guideline § 3E1.1(b)(2), if the defendant is otherwise eligible.    The defendant understands that notwithstanding its present intentions, and still within the Agreement, the prosecution reserves the rights (1) to argue to the contrary in the event of receipt of new information relating to those issues, and (2) to call and examine witnesses on those issues in the event that either the United States Probation Office finds to the contrary of the prosecution's intentions or the Court requests that evidence be presented on those issues.

11.    The parties agree that notwithstanding the parties' Agreement herein, the Court is not bound by any stipulation entered into by the parties but may, with the aid of the presentence report, determine the facts relevant to sentencing.    The parties understand that the Court's rejection of any stipulation between the parties does not constitute a refusal to accept this Agreement since the Court is expressly not bound by stipulations between the parties.

12.    The parties represent that as of the date of this agreement there are no material facts in dispute.

## APPEAL/COLLATERAL REVIEW

13.    The defendant is aware that he has the right to appeal his conviction and the sentence imposed.    The defendant knowingly and voluntarily waives the

right to appeal, except as indicated in subparagraph "b" below, his conviction and any sentence within the Guidelines range as determined by the Court at the time of sentencing, and any lawful restitution or forfeiture order imposed, or the manner in which the sentence, restitution or forfeiture order was determined, on any ground whatsoever, in exchange for the concessions made by the prosecution in this Agreement.   The defendant understands that this waiver includes the right to assert any and all legally waivable claims.

   a. The defendant also waives the right to challenge his conviction or sentence or the manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under Title 28, United States Code, Section 2255, except that the defendant may make such a challenge (1) as indicated in subparagraph "b" below, or (2) based on a claim of ineffective assistance of counsel.

   b. If the Court imposes a sentence greater than specified in the guideline range determined by the Court to be applicable to the defendant, the defendant retains the right to appeal the portion of his sentence greater than specified in that guideline range and the manner in which that portion was determined and to challenge that portion of his sentence in a collateral attack.

c.     The prosecution retains its right to appeal the sentence and the manner in which it was determined on any of the grounds stated in Title 18, United States Code, Section 3742(b).

## FINANCIAL DISCLOSURE

14.     In connection with the collection of restitution or other financial obligations, including forfeiture as set forth below, that may be imposed upon him, the defendant agrees as follows:

a.     The defendant agrees to fully disclose all assets in which he has any interest or over which he exercises control, directly or indirectly, including any assets held by a spouse, nominee, or third party.   The defendant understands that the United States Probation Office (USPO) will conduct a presentence investigation that will require the defendant to complete a comprehensive financial statement.   To avoid the requirement of the defendant completing financial statements for both the USPO and the government, the defendant agrees to truthfully complete a financial statement provided to the defendant by the United States Attorney's Office.   The defendant agrees to complete the disclosure statement and provide it to the USPO within the time frame required by the United States Probation officer assigned to the defendant's case.   The defendant understands that the USPO will in turn provide a copy of the completed financial

15

statement to the United States Attorney's Office.   The defendant agrees to provide written updates to both the USPO and the United States Attorney's Office regarding any material changes in circumstances, which occur prior to sentencing, within seven days of the event giving rise to the changed circumstances.   The defendant's failure to timely and accurately complete and sign the financial statement, and any written update thereto, may, in addition to any other penalty or remedy, constitute the defendant's failure to accept responsibility under U.S.S.G § 3E1.1.

b.      The defendant expressly authorizes the United States Attorney's Office to obtain his credit report.   The defendant agrees to provide waivers, consents, or releases requested by the United States Attorney's Office to access records to verify the financial information, such releases to be valid for a period extending 90 days after the date of sentencing.   The defendant also authorizes the United States Attorney's Office to inspect and copy all financial documents and information held by the USPO.

c.      Prior to sentencing, the defendant agrees to notify the Financial Litigation Program of the United States Attorney's Office before making any transfer of an interest in property with a value exceeding $1,000 owned directly or

16

indirectly, individually or jointly, by the defendant, including any interest held or owned under any name, including trusts, partnerships, and corporations.

## FORFEITURE

15.    As part of his acceptance of responsibility and pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, the defendant agrees as follows:

a.    The defendant consents to the entry of a money judgment in the amount of $23,000, reflecting the amount of the proceeds of the offense charged in the Information (the "Forfeiture Money Judgment").

b.    The defendant knowingly and voluntarily waives and agrees to waive any and all constitutional, statutory, and other challenges to the forfeiture on any and all grounds, including that the forfeiture constitutes an excessive fine or punishment under the Eighth Amendment.   The defendant waives all constitutional, legal, and equitable defenses to the entry of and collection of the Forfeiture Money Judgment.   The defendant knowingly and voluntarily waives any right to a jury trial on the forfeiture of property.

c.    The defendant agrees to consent promptly upon request to the entry of any orders deemed necessary by the government or the Court to complete the forfeiture and disposition of the property.   The defendant waives the

17

requirements of Rules 32.2 and 43(a) of the Federal Rules of Criminal Procedure regarding notice of forfeiture in the charging instrument, announcement of forfeiture at sentencing, and incorporation of the forfeiture in the judgment.   The defendant acknowledges that he understands that the forfeiture of the property, if the government elects to conduct the forfeiture criminally, will be part of the sentence imposed upon the defendant in this case and waives any failure by the Court to advise the defendant of this, pursuant to Rule 11(b)(1)(J) of the Federal Rules of Criminal Procedure, during the change of plea hearing.   Pursuant to Rule 32.2(b)(4) of the Federal Rules of Criminal Procedure, the defendant consents to the Forfeiture Money Judgment becoming final as to the defendant when entered.

       d.    The defendant understands that the forfeiture of the forfeitable property does not constitute and will not be treated as satisfaction, in whole or in part, of any fine, restitution, reimbursement of cost of imprisonment, or any other monetary penalty this Court may impose upon the defendant in addition to the forfeiture.

       e.    The defendant represents and agrees that, within the meaning of 21 U.S.C. § 853(p), the Forfeiture Money Judgment amount represents property subject to forfeiture that, as a result of any act or omission of the defendant,

          (A) cannot be located upon the exercise of due diligence;

18

(B) has been transferred or sold to, or deposited with, a third party;

(C) has been placed beyond the jurisdiction of the court;

(D) has been substantially diminished in value; or

(E) has been commingled with other property which cannot be divided without difficulty.

f.      Payment of the Forfeiture Money Judgment shall be made by postal money order, bank check, or certified check payable to the United States Marshals Service.    On or before the date he ~~enters his plea of guilty pursuant to~~ is sentenced, ~~this agreement,~~ the defendant shall cause said check to be hand-delivered to the Asset Forfeiture Unit, United States Attorney's Office, District of Hawaii, PJKK Federal Building, 300 Ala Moana Boulevard, Room 6-100, Honolulu, Hawaii 96850, with the criminal docket number noted on the face of the check.

g.      If the Forfeiture Money Judgment is not paid on or before the date ~~the defendant enters his plea of guilty pursuant to this agreement,~~ of sentencing, interest shall accrue at the judgment rate of interest (as defined by 28 U.S.C. § 1961) on any unpaid portion thereof at the judgment rate of interest from that date. Furthermore, if the defendant fails to pay any portion of the Forfeiture Money Judgment on or before the date of his ~~guilty plea,~~ sentencing, the defendant consents to the forfeiture of any other property alleged to be subject to forfeiture in the Information, including substitute assets, in full or partial satisfaction of the money

19

judgment, and remains responsible for the payment of any deficiency until the Forfeiture Money Judgment, including any accrued interest, is paid in full.

## IMPOSITION OF SENTENCE

16.    The defendant understands that the District Court in imposing sentence will consider the provisions of the Sentencing Guidelines.   The defendant agrees that there is no promise or guarantee of the applicability or non-applicability of any Guideline or any portion thereof, notwithstanding any representations or predictions from any source.

17.    The defendant understands that this Agreement will not be accepted or rejected by the Court until there has been an opportunity by the Court to consider a presentence report, unless the Court decides that a presentence report is unnecessary.   The defendant understands that the Court will not accept an agreement unless the Court determines that the remaining charge adequately reflects the seriousness of the actual offense behavior and accepting the Agreement will not undermine the statutory purposes of sentencing.

## WAIVER OF TRIAL RIGHTS

18.    The defendant understands that by pleading guilty he surrenders certain rights, including the following:

20

a.      If the defendant persisted in a plea of not guilty to the charges against him, then he would have the right to a public and speedy trial.   The trial could be either a jury trial or a trial by a judge sitting without a jury.   The defendant has a right to a jury trial.   However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the prosecution, and the judge all must agree that the trial be conducted by the judge without a jury.

b.      If the trial is a jury trial, the jury would be composed of twelve laypersons selected at random.   The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges.   The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty.   The jury would be instructed that the defendant is presumed innocent, and that it could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt.

c.      If the trial is held by a judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not he or she was persuaded of the defendant's guilt beyond a reasonable doubt.

d.      At a trial, whether by a jury or a judge, the prosecution would be required to present its witnesses and other evidence against the defendant.   The

21

defendant would be able to confront those prosecution witnesses and his attorney would be able to cross-examine them.   In turn, the defendant could present witnesses and other evidence on his own behalf.   If the witnesses for the defendant would not appear voluntarily, the defendant could require their attendance through the subpoena power of the Court.

    e. At a trial, the defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify.

   19. The defendant understands that by pleading guilty, he is waiving all of the rights set forth in the preceding paragraph.   The defendant's attorney has explained those rights to him, and the consequences of the waiver of those rights.

## USE OF PLEA STATEMENTS

   20. If, after signing this Agreement, the defendant decides not to plead guilty as provided herein, or if the defendant pleads guilty but subsequently makes a motion before the Court to withdraw his guilty plea and the Court grants that motion, the defendant agrees that any admission of guilt that he makes by signing this Agreement or that he makes while pleading guilty as set forth in this Agreement may be used against him in a subsequent trial or other proceeding if the defendant later proceeds to trial.   In particular, by signing this agreement, the

defendant agrees that all of the statements in paragraphs 8.a. through 8.t. above are accurate and truthful, and by signing this agreement, the defendant accepts that those factual stipulations are truthful admissions that may be used against him in a subsequent trial or other proceeding.   By signing this agreement, the defendant voluntarily, knowingly, and intelligently waives any protection afforded by Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence regarding the use of statements made in this Agreement, including the statements in paragraphs 8 (a) through 8 (t) above, or during the course of pleading guilty when the guilty plea is later withdrawn.   The *only* exception to this paragraph is where the defendant fully complies with this Agreement but the Court nonetheless rejects it.   Under those circumstances, the United States may not use those statements of the defendant for any purpose.

21.   The defendant understands that the prosecution will apprise the Court and the United States Probation Office of the nature, scope and extent of the defendant's conduct regarding the charges against him, related matters, and any matters in aggravation or mitigation relevant to the issues involved in sentencing.

## **COOPERATION**

22.   The defendant agrees that he will fully cooperate with the United States.

23

a.      The defendant agrees to testify truthfully at any and all trials, hearings, or any other proceedings at which the prosecution requests him to testify, including, but not limited to, any grand jury proceedings, trial proceedings involving co-defendants and others charged later in the investigation, sentencing hearings, and related civil proceedings.

b.      The defendant agrees to be available to speak with law enforcement officials and representatives of the United States Attorney's Office at any time and to give truthful and complete answers at such meetings, but he understands he may have his counsel present at those conversations, if he so desires.

c.      The defendant agrees he will not assert any privilege to refuse to testify at any grand jury, trial, or other proceeding, involving or related to the crimes charged in this Information or any subsequent charges related to this investigation, at which the prosecution requests him to testify.

d.      The defendant agrees that his sentencing date may be delayed based on the government's need for the defendant's continued cooperation, and agrees not to object to any continuances of the defendant's sentencing date sought by the United States.

e.      Pursuant to Section 1B1.8(a) of the Sentencing Guidelines, the prosecution agrees that self-incriminating information provided pursuant to this Agreement to cooperate will not be used in determining the applicable guideline range, except as may be provided in this Agreement and under Section 1B1.8(b) of the Sentencing Guidelines.

23.     In the event that the defendant does not breach any of the terms of this Agreement but the Court nonetheless refuses to accept the Agreement after the defendant has made statements to law enforcement authorities or representatives of the United States Attorney's Office pursuant to this Agreement, the prosecution agrees not to use said statements in its case-in-chief in the trial of the defendant in this matter.   The defendant understands that this does not bar the use of information and evidence derived from said statements or prohibit the use of the statements by the prosecution in cross-examination or rebuttal.

24.     Pursuant to Guidelines § 5K1.1 and Rule 35(b) of the Federal Rules of Criminal Procedure, the prosecution may move the Court to depart from the Guidelines on the ground that the defendant has provided substantial assistance to authorities in the investigation or prosecution of another person who has committed an offense.   Pursuant to Title 18, United States Code, Section 3553(e), the prosecution may also move the Court to impose a sentence below the level

25

established by statute as a minimum sentence for charge in Count 1 on the ground

that the defendant has provided substantial assistance in the investigation or

prosecution of another person who has committed an offense.    The defendant

understands that:

      a.    The decision as to whether to make such a request or motion is

entirely up to the prosecution.

      b.    This Agreement does not require the prosecution to make such

a request or motion.

      c.    This Agreement confers neither any right upon the defendant to

have the prosecution make such a request or motion, nor any remedy to the

defendant in the event the prosecution fails to make such a request or motion.

      d.    Even in the event the prosecution makes such a request or

motion, the Court may refuse to depart from the Guidelines or to impose a sentence

below the minimum level established by statute.

25.    The defendant and his attorney acknowledge that, apart from any

written proffer agreements, if applicable, no threats, promises, agreements or

conditions have been entered into by the parties other than those set forth in this

Agreement, to induce the defendant to plead guilty.    Apart from any written

proffer agreements, if applicable, this Agreement supersedes all prior promises, agreements or conditions between the parties.

26.    To become effective, this Agreement must be signed by all signatories listed below.

27.    Should the Court refuse to accept this Agreement, it is null and void and neither party shall be bound thereto.

AGREED:

CLARE E. CONNORS #7936
United States Attorney
District of Hawaii

_____
MICHAEL NAMMAR
Chief, Criminal Division

Dated: _2-14-2022_

_____
KENNETH M. SORENSON
MICAH SMITH
MICHAEL F. ALBANESE
Assistant U.S. Attorneys

Dated: __2/14/22__

_____
TY J. K. CULLEN
Defendant

Dated: __2-10-2022__

_____
BIRNEY BERVAR
Attorney for Defendant

Dated: __2/10/22__

27